The next case for argument is 21-1067, Adobe v. RAH Color Technologies. Mr. Kelly, whenever you're ready. Thank you, Judge Post. May it please the Court. I'd like to start today by discussing the Court's recent decision in Ironburg, but before I do, it's worth noting that the reference that's at the heart of the dispute in this case is an industry standard. It's an industry standard that RAH cited and discussed in its own patents. It's a standard that was cited and discussed by patents filed by Canon, Kodak, Xerox, Apple, and it's easily authenticated by a handful of simple comparisons. That kind of leads to the question why Adobe didn't get a better version with its IPR petition in the first place. Your Honor, the version that Adobe got, they got from the source. We tried to do the best we could, and obviously things went in a different direction, and so we did the next best thing we could. Well, it wasn't the best thing because the other problem with the initial submission was that you also, apparently somebody thought, well, we need something more than this document. We need a declaration to go with it, and that declaration was ultimately not accepted, and let's assume we agree with the board there because you didn't make the witness available for cross-examination, right? Everybody was on the same page. We can't just do this document. We need this document and something more. Am I right about that? Yes, you're mostly right, Your Honor. The declarant did ultimately agree to be deposed and R.H. chose not to depose him, but, Your Honor, respectfully what I'd say is that it doesn't matter at this point. Yes, Dr. Green's declaration has been excluded. Mr. Kelly's declaration has been excluded. There's a lot that has been excluded, but what hasn't been excluded are documents before the board, evidence of authentication, good evidence that this court said in value- Well, where's the evidence for authentication that was submitted in the petition along with Let's just focus on 1041, okay, or 1014, I'm sorry. Where was the evidence in the petition for the authentication of that? Well, the evidence in the petition, Your Honor, was the Dr. Green declaration, but a petitioner is permitted to add supplemental information after institution when a challenge arises, and there's no doubt that the board- That's your reading of that. What are you basing that on? Is that just the way the rules, the federal rules work? It's the way the PTAB rules work. The PTAB allowed us to submit supplemental information. They did not allow us to submit all the supplemental information we sought to submit, but they moved to exclude the references that the comparisons can be based on, and the board denied that motion to exclude. Those references are before the board. That evidence is before the board, and the board refused to look at it. The rule says that to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. You're saying he doesn't have to do that on his own in the first instance. He can do a little bit of that, and then somebody challenges it, and he comes back and does a little more to close up the challenge. Is that your reading of the rule, that it's sort of like a traveling, sort of moving target? I wouldn't call it a moving target, Your Honor, but I would call it a rule that acknowledges that there is a bar to get over the evidentiary standard at institution where there are no fact findings made, and we got over that bar because at institution, the board did a comparison under 901B3, and it determined that the declarations attachment and Exhibit 1014, which Your Honor raised, were, in the board's words, identical. But at the board, if you get past institution, and it's instituted, and the patent owner raises a challenge about authentication, as this patent owner did, you are permitted to move to add supplemental information. We did, and so the board in the first instance, just based on the petition, which was just the exhibits because your declarations were thrown out, the board was able to look at the content of 1014 and say, yes, this is identical to 1080. You just represented what happened in the very first instance when the board looked at this exhibit. Really? Is that how things went down? Essentially, yes, and let me clarify if I need to. What happened was the petition included a declaration. The declaration was by Dr. Green, and the declaration explained why the versions 3.0 and 3.01. But the declaration was thrown out, and if we don't reverse that, find that action by the board, where does that leave us? How can we rely on a declaration that we could affirm the board has appropriately got thrown out of the record? Your Honor, the declaration was excluded, but it was excluded after institution. So I acknowledge it needs to be redone in some respects after institution because of their challenge. We moved to submit supplemental information, and the board permitted that. The board said, okay, you can get in some supplemental information, and you'll see ... I'm a little confused. You're talking about a comparison that was done prior to institution. What was the comparison? You submitted 1013 and 1014. Was that compared to something else that was in the record? Yes. That was attached to the declaration? It was the declaration attachments, and the reason that this came up ... What were the declaration attachments? They were the same documents. So, Your Honor, the reason this came up is when Adobe filed ... Wait, they were 1013 and 1014? They were 1013 and 1014, so what Adobe did when it filed its petition ... So that's not really a comparison. That's just saying the documents submitted with the petition are valid, and here they are again. So, to be clear, Judge Hughes, what happened was the petition was filed with various exhibits. One of those exhibits was a declaration from Dr. Green, and attached to Dr. Green's declaration was his own exhibits that he said, those are ICC versions 3.0 and 3.01. The petition also had additional exhibits, and two of those additional exhibits are, in fact, ICC 3.0 and 3.01. So, what Adobe did was it took Dr. Green's declaration with the attachment and submitted it, and then at the exact same time, it took the attachments and submitted those again as exhibits 1013 and 1014. The reason this came up, Your Honor, the reason ... Not those identical documents, because the ones that were ... So, you mean the attachments to Dr. Green's declaration had draft over it, a draft written on the top? Because that's the issue in 1014. One of the issues is that you've got three drafts on the top of the document. Was that the document that he attached, the 3.1? Yes, I think so, Your Honor. So, what they did was they said, these can't be the same documents, because there's a board rule that says that you can't submit a document twice, so therefore these must be different documents. The board responded and said, well, we can look at the documents ourselves under the rules of evidence, and we find them to be identical at this stage, so we're just going to move forward. Then there was this debate about Dr. Green not being able to be deposed, because he wasn't willing to be deposed. I shouldn't say he wasn't able to. He was not willing to. Then we tried to get in supplemental information. Ultimately, Your Honor, we did get in supplemental information, and what we got in were copies of ICC 3.0 and 3.01 that RAH submitted with its patent application, after it filed its patent application. Also, we got into the record ICC 3.0 and 3.01 that Canon submitted before the critical date. So what we have at this point, Your Honor, in the record, the board admitted all of this, is we have our exhibits, 2013 and 2014. Canon's exhibits filed before the critical date of the same references, and RAH's exhibits filed in its IDS statements during prosecution of the patents at issue. So what was the basis for the board excluding it? Again, for the 1014, not the 1013. It said what you... Didn't the board, though, rest on the inadequacy of the authentication of what you submitted in the petition? Wasn't that what they were looking at, just that document? I would say no, Your Honor. At that point, at the final written decision stage, the reason the board granted their motion to exclude 1013 and 1014 was because at that point, it had excluded the declarations of Dr. Green and Mr. Kelly. At that point, the board said, we have no evidence. We understand what you're telling us about how all these documents are substantively the same, but what do you want us to do? Look at them? We need testimonial evidence from your declarants. So if those determinations of excluding those declarations from the record are affirmed, then where does that leave you? If the board said, you got nothing else because we excluded this, and we say, okay, they were right. They excluded it. Why aren't you where the board was, which is the problem was inadequate? Your Honor, we're exactly where Valve was in this court's decision in Valve. Yes, there are no declarations in the record that the board could rely on at this point, but what there is in the record are the documents themselves. When you say the documents themselves, you're talking about the copies of 3.0 and 3.01 that RAH submitted in its file histories of these various patents. Yes, and those are exhibits 1077 and 1080. Those are in the record. Those are from the USPTO file history. The Valve opinion said those copies are okay and authentic because, number one, those are official public records of an agency, and two, there's a hearsay exception here because by the patent owner in Valve submitting those, the patent owner was essentially accepting that whatever copy it was submitting to the PTO is the actual reference that it says it is. Therefore, it's okay for the board and this court to look at that reference and assume that it is the very reference and then compare it to the exhibit that was submitted by the petitioner in Valve. Almost. Almost. The difference is, from what you just said, Your Honor, is that in Valve there was also a comparison that was required. It was a comparison between the attachment to the petition, in other words, the exhibit of the article, and the document that was submitted during prosecution. They weren't the same documents. There were differences. The board declined to find the document submitted with the declaration authentic, saying that it didn't have to do a comparison with this other document, the document from the file history. This court in Valve said, that's a mistake. You're the trier of fact. This is evidence. You can make the comparison yourself. It wasn't, Your Honor, that they were authenticating the reference from the file history. The question was the authentication of the reference that was submitted with the petition and whether or not that was sufficiently authenticated by showing that it was substantively the same as the reference submitted during prosecution. That's the question I'm a little lost on. Is it your burden to show that your exhibit, the document that you submitted as your exhibit, 1014, is the same document that was submitted to the PTO through an IDS? Or is it nothing more than just whether the content of your document that you submitted as an exhibit is the same or essentially the same as the content of the copy of the reference that was submitted in the IDS? Our burden, Your Honor, is to submit sufficient evidence to support a finding that the document that we submitted with our declaration is what we purport it to be. What do you purport it to be? Is it the final official copy of 3.0 and 3.01? Your Honor, I would just push back on a little bit that there is such a thing as the final official copy of 3.0 and 3.01. This is an industry standard, as you said yourself. Why wouldn't there be an official final version of these standards? It was an industry standard that was produced electronically. It was evolving. The public was producing input. The actual version of the ICC is called 2. It was standard number 2. It was first put out as version 3.0 and then 3.01. I accepted it as a version 3.0. What did you purport exhibit 1014 to be when you submitted it? It says draft, draft, draft. You didn't say this is a draft of something, right? Your Honor, we said it was ICC 3.01. Yes, it may have draft across the top of it, but that does not mean that ICC version 3.01, as available from the ICC itself, did not say draft across the top. The question is whether or not... You're saying, the sub-question to all of this, and we've talked about VALV a lot and we've got Bitstream, is whether the differences between the submitted document and the actual authentic document are relevant or important. This is a different difference, right? None of them had draft, draft, draft. Those differences were timing and some of the formatting and stuff like that. This seems to be something of a different kind when it says draft. For example, what if it said draft never to be used for any official purpose? Does that make sense? We know the content. If we look at the content, it's the same as 3.1. It's still okay. It's still okay, Your Honor, because I think the intuition here is that when it says draft at the top, that what follows draft, the substantive information, is no longer trustworthy because it was just a draft. That's the intuition. The intuition is resolved by the comparison. The question is, is our exhibit authentic in the sense that it is some version of it? You're not using this for timing purposes or anything, right? That might matter if it was a draft and what you need to do is post-date it to the draft is earlier and the final version is later than the priority date. It might matter then, right? It could matter if they produce evidence that the substance of what... You're not relying on this for when the standard was issued. That seems to be undisputed and the content seems to be undisputed. The draft here to you is irrelevant. The words draft are irrelevant, Your Honor, and the reason that they are irrelevant is because there is no substantive difference between the document that we submitted and the document that Canon submitted prior to the critical date and the document that REH itself submitted. They are identical in almost all respects. Is that how Federal Rules of Evidence 901 works? That all you look at is the content? I just assume that you need to come forward with some kind of evidence to assure us that the item that you've submitted is what you say it is. If you say it's 3.01.1.1.1.1.1.1.1.1.1.1.1. published in May of 1995, then we have to figure out whether that's true or not. And if it says draft, draft, draft across the top page, then isn't the Board within its reason to say, wait a second, maybe this is some internal document and this is not the actual document you're saying it is? Your Honor, what the Board should do is they see the word drafts and they see indicia that they're different documents, then maybe that's a new direction that the Board can go. But REH itself said prior to institution that our exhibits were identical to what was already before the examiner. The issue is the substance. That's what Valve explains. What is the word authenticity? We use the word whether it's authentic. What does that mean in this context? It means the substance of what we're relying on is an authentic representation of the disclosure that was contained within ICC 3.0 and 3.01. And the difficulty, I acknowledge, is this is an electronic document. It was evolving. It was changing. So the question is, what we submitted, is that substantively the same as what we're trying to rely on in some version of the document which is authentic? I know you're way out of your time, but I want to just press the boundaries on how far this can go because your view is basically as long as it's an authentic representation of the content and you're relying on for the content, not for timing anything, it's okay. What if somebody, this is crazy of course, nobody would do this, but what if somebody decided that they didn't have a printer so they were going to hand copy and print out on pieces of paper this standard? And for some reason that's all you came up with and you submitted to the board and said, this is this standard and you give them 100 pages of handwriting. Is that still an authentic copy as long as it's identical to the actual standard? Or let me make it a little bit more complicated. If you say it's an authentic copy, is the board obligated to compare it to something else that's in the record to determine that it's a standard or is the fact that it looks like this crazy handwritten document enough for them to reject it altogether? Your Honor, I would say that the board's obligation is to compare the two documents. And if the board's conclusion is that it's handwritten and there's really no way it could be the same thing and they don't feel like reading all through it, then they might be within their rights to say this is not an authentic document. But here the board did not compare the two documents. They didn't say they had too much evidence. They said they had no evidence at all. Let me ask you just one more question. REH, and we can ask them about this, they seem to forget about 1014 and 1013. They seem to be challenging the authenticity of the 1077 and the 1080. And they say, maybe I'm misunderstanding, they say that you fail to present admissible evidence that they are what they purport to be. Am I right about that and is that a problem for you? I think you are right and it's not a problem. It's, I would say, a borderline frivolous argument. What they're saying is that they had a document that they submitted themselves that under their duty of candor they said this is ICC 3.0 and 3.01 and that they said this is the publication date. And now they're saying, well, we don't know where we got it. Maybe where we got it they had just fabricated it. We're not relying on it for those purposes. We're relying on it because they have already acknowledged the publication date of what they submitted. And that's what Valve said. That's what Valve said, Your Honor. And we also don't forget... What about the Canon exhibits? So the Canon... Those you have a higher hurdle to deal with because now we don't have Canon here supporting those submissions and we don't know where Canon got those. We can accept perhaps the ones, the 1077 and 1080, given that RAH itself submitted those copies, those versions of 3.0 through 3.01. But the Canon ones, it seems like we have no choice but to push those to the side. Your Honor, I would disagree with that. I would say the Canon documents are actually on a more solid footing because they were submitted to the Patent and Trademark Office prior to the critical date. They're in the files of the Patent and Trademark Office. So we know, we know for a fact that Canon submitted those documents before their critical date, and we know those documents that are in the record are exactly what Canon submitted. So we don't have a hearsay exception like we do for the RAH submitted versions of 3.0 or 3.01? Your Honor, we're not offering an exhibit for the truth of what it says. We're offering a prior art exhibit for its evidence of what had been told to the prior, to artisans skilled in the art before the critical date. We know what was told to artisans before the critical date because we can see the Canon documents that were submitted before the critical date. And then all we're asking the Board to do is to be judges, to be fact finders. We know that they got a lot of evidence and they pushed it aside, but they didn't push these documents aside and they should have compared them. Is there something to the fact that if you're asking the Board to, if you push hundreds and hundreds of pages in front of them, and you fail, you fall down in your attempts to have a supporting declaration to authenticate all these documents, and you just say, here you go Board, get to work, don't you think there's a breaking point where the Board is way too crazy and way too burdensome for us to do this independently on our own? Or are you saying, I don't care how many pages you've got to look at, you've got to get to work? I'm not saying the latter, Your Honor. And I acknowledge that there could be a breaking point, but that's not what the Board said. The Board didn't say they had too much evidence. The Board said that they had no evidence because they had excluded the direct testimonial evidence. And the Board at that point ignored the evidence it had, which were the documents themselves, which is what puts this case squarely on all fours with Valve in our view. I also think, didn't Valve say something about suggesting that this isn't a case with hundreds of thousands of pages, this is just a small number of pages? They seemed to suggest that it might be different if it was an absolutely monumentally voluminous record. Valve does suggest that, Your Honor, but the Board didn't say that there was a voluminous record, that it couldn't compare these documents. We would submit they're easy to compare. My guess is that some of the law clerks behind me have done the comparison. I've done the comparison. I know they've done the comparison. Perhaps members of this panel have done the comparison. I don't think it's beyond the Board to have done it. Your view, though, comparing it to Valve, because I think you're asking us to go a step further than Valve because of the, I know you don't agree with me, but the draft, draft, draft is troublesome. Is there anything, in your view, as long as the content is the same, are there any other bells and whistles that could affect or undermine the ability to use this as an authentic document under the rule? Your Honor, I suppose in a different case there could be, but the fact that what ultimately was submitted to the PTO and an IDS lacked the draft language at the top of it does not mean that what we submitted is somehow authentic just because it has that at the top of it. So what would you have this panel do? Send it back to the Board and say, under the circumstances here we conclude that you were obligated to, in fact, make the comparison. So please go ahead and do it. At the very least, Your Honor, it should be vacated and remanded so that the Board can compare the evidence in front of it to make the handful of comparisons. Are you asking us to make the comparison, to get on our hands and knees and look through these 75 pages and compare it to the other 75 pages? I think it's 82. 82 pages, and then do that for the other exhibit as well? Or push the two or three buttons that it would require to make the comparison on the computer? Your Honor, in valve, the Court did the comparison itself. This is an appellate court. I understand that issue. I think a vacate and remand for the Board to do the comparison is what we would be principally asking for, but consistent with valve, I think it would be entirely within this panel's right to do the comparison itself as valid. I'm trying to look at what you asked us to do in your brief, but I don't recall explicitly if you asked for that. But I can look at myself. Your Honor, the comparisons that we think are important are the comparisons that we urge the Board to make. There's four, two for each document. And we could do that, and if that's sufficient, without getting into any of the evidentiary determinations that the Board made? Yes. We don't need those declarations if the Board is willing to look at the evidence that we put in front of it. But if the Board doesn't have to look at that evidence, then yes, we would also urge the Court to consider our briefing. I don't want to get into it now at this time, but our briefing about Mr. Kelly's declaration and Dr. Green's declaration as well. Unless the Court has any questions right now. Thank you very much. We'll restore some rebuttal time, but let's hear from Ms. Richards. Good morning. Good morning. Thank you, Your Honors. The issue on appeal is whether the PTAB's factual findings about the authenticity for the specific exhibits, 1013 and 1014, lacked substantial evidence. The issue is not whether there was any possible way Adobe could have won or any argument they could have made. What do you mean by authentic? It's not the same document. I mean, we've got VAL now. We've got the benefit of VAL, the benefit of Bitstream. So we know our Court, I think, has said, tell me if you disagree, that it's the content that matters. It's obviously not the identical document or the same document. It's the content. Why is this case different from those cases? Well, what Adobe set out to prove, and it was Adobe's burden at all times, and they failed to prove it. And in fact, they affirmatively disproved this. We'll get back to that. What 1013 and 1014 were authentic versions that were publicly available in February of 1996. There was a question to Adobe's counsel about why the timing matters. The timing matters because what they had to show was that these very versions were publicly available by February of 1996. But doesn't that go against what happened in Bitstream and VAL? In VAL, we said it was the same version of 1013 and 1014, and then the comparator reference that was submitted in the final history. And likewise, in Bitstream, the exhibit that was submitted with the petition had a 2015 copyright date, and then on reply, the petitioner submitted a 2011 version of that same book, which predated the patent. And so therefore, these are examples from our own case law, where if the attachment to the petition had a date that came later than the actual date of the reference they're relying on, we said that was okay. Well, there's a lot to talk about here, starting with VAL. I'd like to start with VAL, and then I'd like to talk about the actual exhibits in the file history, because what counsel said was completely in conflict with the record on those. But with respect to VAL, VAL is different on the facts, it's different on the procedure, and this case is unlike VAL, because even if you compare the documents, even if, despite everything, this court decided to compare the documents, Adobe still doesn't win. First, VAL was a totally different factual situation. In VAL, there's an article about an Xbox controller, and first of all, it's an article. It's not an evolving specification. The first version said it was posted six years ago. The second version has an actual date of online publication. The only difference, this was undisputed, was the timestamp. Here in this case, we're not talking about an article or anything that was ever, maybe ever published. It's a standard, and it's a specification that was under development. So a key difference in this case is that Adobe itself put in volumes of contrary evidence in the record here. So what Adobe fails to address is the actual record. Contrary evidence establishing what? Well, it was Adobe's version to prove that 1013 and 1014 were the authentic versions that were publicly available before February of last year. Right. Can we just start with 1013? Yes, we can. 1013 looks pretty identical to me to 1077, which is the copy of the 3.0 that you submitted in an IDS in the file history of at least one of these patents. Yes. So under Valve, I would think that one would be okay. What's wrong with that, given that there are no distinctions? Or just assume for the moment there are no distinctions between 1013 and 1077? Thank you, Your Honor. There are two things wrong with that. First, this appeal is about whether there was substantial evidence for the PTAB's conclusion. So if we go straight to 1077, that ignores everything that Poynton said, everything that Merck said, the contemporaneous documents that said it wasn't final, it wasn't public, and we can talk in detail about the contrary evidence. But it's the same document that you submitted to the PTO. Yes. So Exhibit 1077, there's no dispute that that was submitted to the PTO. But the undisputed testimony... Wait, and it's the same as 1013? Well, that was Adobe's burden to prove, and they didn't prove that. But you're an officer of the court. You've looked at these documents. I don't care what their burden is. Is it the same, or is it not the same? It is the same, but that doesn't matter because... Well, that's for us to decide whether it matters or not. May I explain why it doesn't matter? It doesn't matter because the undisputed testimony in the record is the patent owner obtained 1077 in 2011. That's 14 years after the critical date. The patent owner filed it in an IDS in 2012. The critical date in this case is 1996. You submitted it under oath saying that this is ICC 3.0 dated blah, blah, blah, 1994. That was your submission to an agency and an official record. So, you know, per valve, we say that the board can and should rely on that fact. And then the board is obligated to do a comparison against that reference, against the exhibit that was submitted along with the petition. Yes, but even if you do... A few thoughts. Even if you do the comparison, that doesn't authenticate and you find it the same. That doesn't show that 1013 was available to the public. It wasn't available... Let's assume that they're the same. Let's say they're the same, and you decide that. Having a version in 2011 that's the same as Adobe's version doesn't prove anything. What Adobe's trying to prove is that 1013 was publicly available in 96. I agree with you, of course, it was filed as part of the IDS, but filing in an IDS is legally different than calling it prior art. 1080 is the one that the patent owner called prior art. That's why the Rescue Net case is in the briefing because the way that the patent office rules work is people are encouraged to put in references, and that's not counted as a material omission against you. The thing about the date is all of the 15 versions in this record have the same dates. That's part of what convinced the board that it couldn't trust these dates. That's a big part of the problem. Totally different than Valve where one article says six years ago and then the next version says 2010. They put in 15 versions that their own witnesses said were all different. Point and testify that industry insiders... You have to agree. There's got to be... Compared to what? Are we looking at the 3.0 and the 3.1? There's so many documents flying around on the boss track. What do we look at? What are we comparing it to to establish that it was publicly accessible prior art? Well, Your Honor, I share your question, and that's one that we have. On appeal, they've focused on these file history references, but below, they didn't ever ask the board to compare any documents. They never raised 901B3. This is a totally new avenue on appeal. I guess what we're talking about based on the questions... I think that was the situation in Valve, too, though, wasn't it? I believe that below... Below, they didn't have any of these... What Adobe did is it hired people... So you're saying there were no document... There were no documents anywhere out there in the universe that would establish this prior art date that we're trying to look for. I don't know about that, Your Honor. All I know is that for some reason, Adobe chose to use 1013 and 1014. The implication... Yeah, but we're also talking about other things. We're talking about 1077 and 1080, and we're talking about 3.0 and 3.1. So there are documents in the record. In your view, are any of those documents... been sufficient if they had been included in the petition? I think your question, and this was where we started, was, was there any possible way that Adobe could have won at the PTAP? And the answer to that is I don't know. Had they attached 1077 to the petition, we wouldn't have had an argument about 1077 being 1077. The argument would have been about whether 1077 was publicly available before February 1996. We've never walked away from the fact that we've had 1076. These are standards, right? Well, are they not standards? You made a face at that. I apologize for the face, Your Honor. I understand. Sometimes it's involuntary. I was on the other side. But they're representative-y standards. Well, sort of. He said that... I don't want to get caught up in that. That's not what I wanted to ask about. Let's just assume they're standards. And they're standards that have different numbers. Is there any real dispute about this date, or is your dispute that nobody has been able to establish the date for these standards? There is a real dispute about this date and what was publicly available before the date. That's why we keep talking about Poynton. Poynton was their witness. They hired him. He was there at the time, and he came in and said, Industry insiders were actively changing this document during the same time period. That's where the final written decision starts. But we agree, so we have a baseline, that there is something called an ICC 3.0 and an ICC 3.01 that were respectively published in 1994 and 1995. I agree there is something called ICC 3.0 and 3.1. Whether it was published in 94 or 95 is hotly disputed. Well, in, I believe, one of your patents, you said that there is this thing called ICC 3.01, right, and that it's dated 1995. Thank you, Your Honor. Your patent already confesses to that. Thank you, Your Honor. So I believe you're talking about Exhibit 1080, and you are absolutely correct.  We did call that prior art in one of the patents. That was filed after the critical date, and the undisputed testimony from Adobe's own witnesses is that 1080 is different than 1014. So no dispute, 1080, we call it prior art. We've never been walking away from that. Well, that's what we're talking about having the board look at, if there is a difference, notwithstanding the words draft, whether the content is different between 1080 and 1014. That's the inquiry here, and that's Mr. Kelly seems to be saying we should just tell the board on remand to make the comparison if there's any difference in substance between the content of those two. So are you okay? What's wrong with that? Well, what's wrong with that, Your Honor, is that this is an appeal. This isn't a case in the first instance where this body is doing the fact-finding. The board issued a final written decision, and there is substantial evidence to support it. Well, we are here to review whether or not the board did it right under whatever standard of review it is. So what is the problem with why, what can you point to to say we are not allowed or we are prohibited from telling the board to go back and do a comparison of the content of 1080 and 1014? And if they're not the same, I guess you prevail, and if they are, you don't. What's wrong with that? Well, the standard on appeal is whether the decision lacks substantial evidence. The decision rested on the testimony from Adobe's own witnesses, including Poynton and Kelly, who repeatedly said 1080 and 1014 are different. So the issue here today isn't is there some argument Adobe could have made below that maybe would have won. Well, let's just assume we don't see this as a substantial evidence issue. We see it as a legal issue that the board had an obligation to compare 1014 and 1080 and they didn't do it. I mean, I assume you have compared 1014 and 1080. Is there a substantial difference or not? I mean, my understanding is it includes the word draft and a few of the pages are out of order, but other than that, it's the same. Is that a fair representation? I think that there are many more differences than that. What are they? Well, I cannot detail them, but they're detailed both in Kelly and in Poynton in multiple pages, all the differences. Well, can you give me an example or two of ones that you think are substantial and that would make a difference? Well, Your Honor, I would not object to attempting to do that, but the issue is that – No, I'd really like to know because I – yes, I will admit I did not do this personally, Judge Chen. My clerk did this. You pressed the button. Yeah, but we looked at this, and as far as I can tell, it includes the words draft, which is a little troubling but not necessarily fatal, and some of the pages are clearly out of order and there may be different line breaks, but the actual text and content seems to me to be substantially identical. Is there any example you can give me that refutes that? I can fish out what Kelly and Poynton said or they did here. Except what we were talking about with Mr. Kelly was that they're asking for a remand so that the board can do that comparison in the first instance. What's wrong with that? If you have arguments, if you have 100 differences that you can outline, I don't think at least what Mr. Kelly is advocating would foreclose you from making that argument to the board. The board decided this case, I guess, without the benefit of Val. Val clearly said maybe there were differences in some of the facts, but Val said, or you've got to look at the documents unless they're 100 million pages. You've got to compare the content and not just the bells and whistles. So what's wrong with under Val? Why am I incorrect that Val tells the board that they should have done a comparison of the content? Unlike in Val, Adobe didn't put the board in a position to compare these documents. On appeal, they're focusing on 1077 and 1080, but this relates to something Judge Chen asked him previously. At the time, in this case, there were 15 different versions. 15 different versions of what? Of these specifications or standards, and Adobe never said below it's 1077 and 1080. They said you should keep looking until you find one that matches. Meanwhile, Adobe's witnesses are saying this is a constantly changing document. When you say there's 10 or 15 different versions, do you mean there's evolving versions of 3.0, 3.1, or that there were 15 different versions of 3.1? The first one, Your Honor. Well, that's not really the relevant question, is it? The relevant question is what's 3.1, and is 1014 authenticated by a different document in the record? You might have a better argument if Adobe said, look, there are 15 different versions in the record of what we think 3.1 could be. This one matches ours, even though these other 14 doesn't. But I don't think that that's the case, is it? It's 1014 and 1080. Are there any versions of 3.1 in the record that don't match 1014? Well, this relates to what you asked me before. 1080 doesn't match 1014, and the specific differences are detailed in Kelly and Poynton. But there was something else that I don't think I explained very well. I mean, substantively, I don't mean in terms of formatting. Well, what's so interesting about this case is that nowhere in the record did Adobe say, this is the page of 1013 and 1014 that I'm relying on. This is the key part, and this is where it is in 1077 and 1080. I think you can understand that we didn't actively go and... I know, but you understand my frustration is these are actual documents that you can either say are or aren't the same or substantially the same. Yes. And we either know they are or they're not. And you keep referring to this whole list of things that might be different, but I'm not aware of any, except for the draft language, any substantive textual differences. And I'm certainly not aware of any other versions of 3.1 in the record that do contain substantive differences. So why, if those are the only two versions, isn't it incumbent upon the board to compare them under VAL? I know, they didn't make this argument as well as they could have below. They could have done a lot of better things below, but the same happened in some senses in VAL. And again, what's wrong with sending this back to the board? If you send it back to the board, Your Honor, let's assume, contrary to what Adobe's witnesses have said, that 1014 and 1080 are exactly the same. And you send it back to the board and they find that. Adobe still can't win because they haven't met their burden. 1080 was filed by the patent owner in May of 96. Well, that's a different, I know, you're getting into this timing question, but I don't think that that question is what has been briefed to us and what's on appeal about whether 1080 accurately shows when that standard came into being and the date for it. That seems to be for the board to determine after it looks at the evidence, not before rejecting the evidence just based on authenticity grounds. Well, Your Honor, what Adobe set out to prove was that 1013 were the authentic versions publicly available before February of 96. And 1080 was filed after the critical date, and the only record evidence of anyone in the world having that exhibit, 1080, is that our patent owner had it. But he was an industry insider. One guy who obtained it by letter, and this is all in the record, and got it by letter back. That does not make public accessibility. But I guess the concern I'm having is maybe you're right about that. But the board didn't, that wasn't the reason that the board rejected 1014. The board had never had an opportunity to make this inquiry. And at some point, if we determine they put on enough, you all have an opportunity to put on a rebuttal case and to try to rebut whatever presumption, I don't know what words we would use here. So I don't think that Mr. Kelly is asking for anything that would foreclose you all. If you have that kind of evidence, go for it. But I don't think, I think your arguments do not correspond to the basis upon which the board relied when it rejected 1013 and 1014. Well, in the final written decision, they say Adobe didn't prove it was an authentic version publicly available. And I can't remember now if it was May of 95 or March of 95. But that's part of that same sentence. Because to talk about authenticity in a vacuum in this case doesn't do anything. We've touched on this a little. We agree that Exhibit 1080 is Exhibit 1080. If they had used 1080 in their petition, we wouldn't be arguing about whether 1080 is what 1080 is, because it doesn't make sense. The question is, what was the authentic version that was public? The authenticity question is integrally related with the date question. But is it your view that under Valve we cannot say, let's assume the word draft was not in the Exhibit 1014. Let's assume it was just the content. And if the content is identical than what was in Exhibit 1080, then what is your argument under Valve in terms of the lack of authenticity? Obviously, it's not the same document, but I thought, do you not read Valve as saying when the content is identical, then it's an authentic representation or whatever of that other document. I mean, if that's the conclusion that the board reaches, that the content is identical. So leaving aside the word draft at the heading, why not? Why didn't they have to look at the content? Why could they just say, well, this isn't 1080. This is a different document. It's not the identical document or a Xerox of the identical document, and therefore we don't have to think about it at all. I thought we were past that in Valve and Bitstreet. Well, two thoughts, Your Honor. You know, what Adobe's asking the Federal Circuit to do is focus on its evidence, its preferred evidence. But there was a lot more on the record down there. Other than its evidence and even your evidence? No. There's this unusually large and voluminous record that Adobe presented. Yeah, but the board didn't look at all that other evidence in making its determination. It just refused to make the initial determination because it concluded 1013 and 1014 weren't authentic. There's nothing that will foreclose you from going back and saying to the board, look, even if these are authentic documents of these standards, they still didn't prove these were publicly available before the priority date. That determination has never been made at all, so it sounds to me like you're asking us to affirm on a basis that the board hasn't even reached yet. The final written decision begins by saying the lens through which we view these documents is Poynton's testimony. This is in the appendix at 4142, and it talks about their witness, their paid witness, Poynton, saying that these documents were actively changing at the time. That's how it began. They talked about Merch, their paid witness who was there at the time, who said the versions were changing, and even he didn't know what specific changes were occurring. So today, Adobe on appeal is making an argument that they never made below, that it's all about 1077 and 1080. What about the Canon exhibit for 3.01 that does happen to have the draft draft statement on the top page? That looks pretty identical to 1014. Thank you, Your Honor. So the Canon versions 1076 and 1079, again, both Poynton and Kelly testified that they were different than 1013 and 1014, and Adobe never argued below, and they abandoned this argument in their reply brief, that the fact that those were in the Canon file histories ever meant they were publicly accessible. He said that there were people in the public providing inputs, but Canon is an industry insider at the core of the development of these standards. So the fact that Canon has them doesn't say anything about whether they're final or whether they're published or whether they're publicly accessible. There's no doubt about the authenticity of 1076 and 1079 in and of themselves, but what the final written decision said is these are different versions. There's also no doubt for purposes of this case that ICC 3.0 and ICC 3.01 are prior art. The real question is the thing that we have in front of us that purports to be 3.0 and 3.01, are they what they purport to be? That's exactly right, Your Honor. The whole case stems from the fact that Adobe chose to use 1013 and 1014 in its petition, and the implication is that the other versions were different or were not publicly accessible. We don't know why they chose to use those two. That's something we can't know. Thank you very much. Thank you, Your Honor. Appreciate it. Mr. Kelly will restore three minutes if we bubble, if you need it. Thank you, Your Honor. I think the Court understands at this point that a lot of what opposing counsel is raising was not what the Board based its decision on. I know, but can you touch briefly on the kind of waiver-like issue that's being represented in what you did present and argue with respect to the 1077 and the 1080 and prior art of the stand? Can you touch on that? Yes, that's exactly where I was going. At page 4298 of the record is Adobe's opposition to patent owner's motion to exclude. This is our filing before the PTAB responding to their motion to exclude these references, 1013 and 1014. At page 4303, beginning under Roman numeral heading 3, exhibits 113 and 114 are authentic. Following that is our four-page argument about authenticity. Most of those four pages are about comparing 180 to 1014 and 1077 to 113. What we've been talking about here today, what's in our blue brief, are exactly on those pages. Page 4305, we talk about exhibit 1077, a document identical to 1013. We talk about ICC 3.01, a specification exhibit as 1080. We flip the page. We say authenticity is also established under 901B7 because exhibits 1076 and 1079 are identical to exhibits 1013 and 1014 and have been maintained in the PTO files. Is this the paper to which the Kelly Declaration was attached? No. It went through all of the comparisons? Your Honor, I'm going to be honest. I don't know if his declaration was attached to this paper or not. Okay. But this paper is not citing his declaration in support of that. This paper is making the argument. The argument ends with a single sentence that says exhibits 1013 and 1014 are also authenticated by Drs. Green, Merch, Poynton, and it doesn't mention Mr. Kelly. We have in the record, we have a four-page argument that goes through exactly what we've been urging this court to tell the board to do, and what we would ask is for this court to vacate and remand and to tell the board do the comparison that Adobe asked you to do in its opposition to their motion to exclude. Would we need to do that for 1013 and 1077? I think I heard today opposing counsel say those two are the same. Well, she admitted that they're the same because she has no choice but to admit that, but we would ask that the board be given the opportunity to make all the comparisons itself. The board will see that they're identical, hopefully, because they are. And we made the argument, and the board should address it. The board's the fact finder, and it should be looking at the facts in front of it. Thank you. Thank you. We thank both sides, and the case is submitted.